IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:21-cv-01792-CNS-STV

BERNARD JONES,

    Plaintiff,

v.

YVETTE BROWN and
KRISTI MOORE,

    Defendants.

---

ORDER

---

Plaintiff Bernard Jones and Defendants Yvette Brown and Kristi Moore filed competing motions for summary judgment on Plaintiff's two causes of action. ECF Nos. 185, 187. Because neither side can demonstrate that there are no genuine issues as to any material fact with respect to Plaintiff's causes of action, the Court DENIES both motions.[1]

## I.    BACKGROUND

Mr. Jones alleges two independent but related violations of his constitutional rights. *See generally* ECF No. 143 (Third Amended Complaint and Jury Demand).

---

[1] As explained below, however, the Court grants summary judgment in Defendants' favor on Plaintiff's claims for prospective relief, which Plaintiff now concedes are not viable. The Court denies Defendants' motion as to all other claims.

In 2019, Mr. Jones was an inmate at Fremont Correctional Facility (FCF), where he had lived since 2010. ECF No. 185, ¶ 2. Beginning in December 2016, Mr. Jones challenged his state court convictions through a Writ of Habeas Corpus. ECF No. 185, ¶¶ 4–5. Mr. Jones received an order denying his certificate of appealability from the Tenth Circuit on December 17, 2018, which initially made his Petition for Writ of Certiorari to the United States Supreme Court (the Petition) due March 17, 2019. *Id.* He filed his Petition on February 28, 2019. *Id.*, ¶ 14. On March 11, 2019, the Office of the Clerk for the Supreme Court sent Mr. Jones a letter rejecting his submission, giving him 60 days to refile the Petition. ECF No. 185, ¶ 18. He received another extension from Justice Sonia Sotomayor extending the deadline to May 16, 2019. *Id.*, ¶ 20.

Mr. Jones missed the May 16, 2019 deadline. *Id.*, ¶ 41. He argues that the two law librarians—Defendant Brown and LeeAnn Puga—knew about this deadline, but Ms. Brown effectively prevented him from filing his Petition by the deadline. *Id.*, ¶¶ 15, 25, 36–41.[2]

On May 15, 2019, Ms. Puga was working at the FCF library. ECF No. 185, ¶ 24. That day, during library hours, Mr. Jones informed Ms. Puga that he needed to add page numbers and then print the Petition the following day. *Id.*, ¶¶ 23–25. Ms. Puga informed Mr. Jones that she would not be working at the library the next day (on May 16), but he could submit the Petition to Ms. Brown to print the next day. *Id.*, ¶ 25. According to Mr. Jones, Ms. Puga scheduled the law library appointments for May 16, 2019, including one

---

[2] Ms. Brown worked as the Legal Assistant II at FCF from March 2011 to April 2022, and Ms. Puga worked in the FCF law library as a Legal Assistant from April 2015 to 2021. ECF No. 187, ¶ 3. No other CDOC employees worked as librarians at FCF in 2019. ECF No. 185, ¶ 15.

for him, believing that the law library would be open that day. *Id.*, ¶ 26. Defendants acknowledge that Ms. Puga testified to this, but they argue that the Confidential Roster for May 16, 2019, did not show that any inmates were scheduled to attend either law library session on May 16, 2019. ECF No. 197, ¶ 26.

The law library had two appointment sessions each day, Monday through Friday: a morning session from 8:30 a.m. to 10:30 a.m., and an afternoon session from 1:30 p.m. to 3:30 p.m. ECF No. 185, ¶ 9. Ms. Brown did not open the law library for either session on May 16, 2019. ECF No. 185, ¶¶ 27–28. Ms. Brown closed the law library in the morning of May 16 to attend a staff funeral, and she closed it again in the afternoon for a "p.m. legal service project setting up offender computer scanners" at the law library. *Id.*, ¶ 28. It is undisputed that Ms. Brown learned about the staff funeral on May 15, 2019—the day before the closure. ECF No. 197, ¶ 16. But for the afternoon closure, it is less clear when Ms. Brown learned of the project or how urgent that project was. *Compare* ECF No. 197, ¶ 29 (Defendants argue that Ms. Brown's testimony does not support Plaintiff's assertion that she knew about the time-sensitive nature of the computer project before May 16, 2019), *with* ECF No. 203, ¶ 29 (Mr. Jones argues that, although Ms. Brown called the project "unexpected," she testified that she knew about it "that week or within that time that [she] decided to close that afternoon" and could not remember exactly when).

Mr. Jones did not learn of the closures until the morning of May 16, 2019, because the closures were not posted on the law library's calendar. *Id.*, ¶¶ 31–32. Defendants argue that the closing of the law library on May 16, 2019, was an unexpected closure, not a scheduled closure, and thus, it would not have been on the law library calendar. ECF

3

No. 197, ¶ 31.[3] After learning of the law library's afternoon closure, Mr. Jones told his housing officer that "Ms. Brown told him that the law library would be open that day," that he was on the list of attendees, and that he needed to print his Petition because he could not get another filing extension. ECF No. 185, ¶ 34. Mr. Jones testified that he asked the housing officer to call Ms. Brown, which the officer supposedly did. *Id.*, ¶ 35, Defendants deny that Ms. Brown received a call. ECF No. 197, ¶ 35. Ms. Brown testified that she did not know of Mr. Jones's specific deadline, nor was she aware on May 16, 2019, that Mr. Jones had a deadline that day or whether he had completed his Petition—facts Mr. Jones vigorously disputes. *Id.*, ¶ 36; ECF No. 203, ¶ 36. Given these facts, and Mr. Jones's belief that Ms. Brown closed the library to obstruct him from completing and filing his Petition, Mr. Jones brought a "First Amendment – Denial of Access to Courts" claim under 42 U.S.C. § 1983 against Ms. Brown. ECF No. 143, ¶¶ 92–107.

Turning to Mr. Jones's second claim, on May 21, 2019 (five days after his missed deadline), Mr. Jones filed a grievance against Ms. Brown, asserting that she was unqualified to work as a legal assistant, that she did not "help me in assisting me in the filing of my legal documents," and that he had "been threatened to be sent to another prison for asking that this issue be investigated." ECF No. 185, ¶ 42. He filed a second grievance that same day, stating that Ms. Brown denied him access to the courts by closing the law library on May 16, 2019. *Id.*, ¶ 43. Ms. Brown received both grievances on May 28, 2019. *Id.*, ¶ 44. One day after receiving these grievances, Ms. Brown

---

[3] Defendants group both closures together in their "response to statement of undisputed material facts," stating that the "closing of the law library on May 16, 2019 was an unexpected closure, not a scheduled closure." ECF No. 197, ¶ 31.

submitted a confidential report alleging that she was having issues with Mr. Jones because "Jones consistently questions and complains about his access to the law library and my credentials working as a Legal Assistant II" for CDOC, and further stating that he is "argumentative with me and gets upset if he isn't in the law library every day it is opened." *Id.*, ¶ 45; ECF No. 197, ¶ 45.

Defendant Kristi Moore was the chairperson for the Internal Classification Committee (ICC) at FCF in May 2019. ECF No. 185, ¶ 47. In her role as ICC Chairperson, Ms. Moore initiated requests to transfer inmates to other facilities on behalf of FCF. *Id.*, ¶ 48; ECF No. 197, ¶ 48 (disputing that Ms. Moore was the only person to initiate inmate transfers). According to Mr. Jones, on May 29, 2019, Ms. Moore disregarded the recommendation of Mr. Jones's case manager that Mr. Jones stay at FCF (where he had been housed for nine years) and instead, initiated his transfer to another facility. ECF No. 185, ¶ 49. Defendants argue in response that Ms. Moore's supervisor asked her to transfer Mr. Jones. ECF No. 197, ¶ 49. As justification for the transfer request, Ms. Moore wrote that Mr. Jones "made law library staff uncomfortable and administration would like for him to have a change in scenery." ECF No. 185, ¶ 50. The transfer request specifically noted that Mr. Jones had no history of violence or disciplinary charges while at FCF. *Id.* Ms. Moore testified that her boss, Major Jim Moore—to whom she has no relation—told her to transfer Mr. Jones based on harassment allegations from the law librarians, but she also testified that she did not ask for any additional information. *Id.*, ¶ 51. Mr. Moore, however, testified that he did not remember discussing Mr. Jones with Ms. Moore or instructing her to transfer Mr. Jones. ECF No. 197, ¶ 52.

5

Mr. Jones had no incident reports, charges, or disciplinary actions filed against him while he lived at FCF. ECF No. 185, ¶ 53. He also notes that his grievances from May 21, 2019, were not his first complaints against Ms. Brown: Mr. Jones filed several Step 1 Grievances against Ms. Brown relating to her credentials as a CDOC Legal Assistant, her unhelpfulness in the law library, and insufficient legal access while at FCF. *Id.*, ¶ 54. After being told in response to grievances that it was not his place to question Ms. Brown's credentials, Mr. Jones sent five letters in May 2017 to public officials and the CDOC Executive Director about Ms. Brown's credentials to work as a Legal Assistant. *Id.*, ¶ 55.

Mr. Jones was transferred from FCF to Bent County Correctional Facility (BCCF) on June 5, 2019. *Id.*, ¶ 59. According to Mr. Jones, Ms. Moore's sole basis for the transfer was that Mr. Jones made the law librarians uncomfortable. *Id.* Defendants' only response is that Ms. "Moore's basis for the transfer of Jones was a request from her supervisor, Mr. Moore." ECF No. 197, ¶ 59. Mr. Jones alleges that his transfer to BCCF was retaliation for exercising his constitutional right to file grievances. ECF No. 143, ¶¶ 108–23. He thus filed a second claim for relief: a "First Amendment – Retaliation" claim under 42 U.S.C. § 1983 against both Ms. Brown and Ms. Moore.

## II.     LEGAL STANDARD

Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003) (internal quotations and citation omitted); Fed. R. Civ. P. 56(a). The factual record

6

and reasonable inferences must be construed in the light most favorable to the nonmoving party. *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). The moving party bears the initial burden, but once met, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256 (1986). Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

### III.   ANALYSIS

Both sides argue that summary judgment is warranted in their favor on counts one and two. The Court addresses each in turn.

#### A.   Access-to-Courts Claim

The right of access to the courts does not guarantee access to a law library or to legal assistance but rather establishes the right to "the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Lewis v. Casey*, 518 U.S. 343, 350–51 (1996) (quotation omitted). A prisoner must show that he was frustrated, impeded, or hindered in his efforts to pursue a legal claim. *Simkins v. Bruce*, 406 F.3d 1239, 1243 (10th Cir. 2005) (citing *Lewis*, 518 U.S. at 351–53); *see also Lewis*, 518 U.S. at 351 (a prisoner must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim").

A prisoner is only entitled to relief on an access claim if the plaintiff can show an "actual injury." *Id.* at 351. "To establish actual injury, the plaintiff 'must show that any denial or delay of access to the court prejudiced him [or her] in pursuing litigation.'" *Leek v. Androski*, No. 21-3165, 2022 WL 1134967, at *3 (10th Cir. Apr. 18, 2022) (quoting *Trujillo v. Williams*, 465 F.3d 1210, 1226 (10th Cir. 2006)). The Tenth Circuit has said that a plaintiff "need not show" that he would have prevailed on the interfered-with claim, "only that it was not frivolous." *Id.* (citation and quotations omitted); *see also Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010) (the prisoner must show that he "was frustrated or impeded in his efforts to pursue a nonfrivolous legal claim concerning his conviction or his conditions of confinement" (citing *Lewis*, 518 U.S. at 343)).

          1.     *Plaintiff's Motion for Summary Judgment*

Mr. Jones moves for summary judgment on his access-to-courts claim. ECF No. 185 at 12–16. He argues that the undisputed facts prove that Ms. Brown arbitrarily closed the law library without warning on the day she knew that Mr. Jones had a final deadline. The Court disagrees. Ms. Brown disputes, with competent evidence, that she actually knew on May 16, 2019—when she decided to not open the law library—that Mr. Jones's deadline was that day. ECF No. 197, ¶¶ 39–41 (citing ECF 185-10 (Brown Dep.) 203:3–25 ("Q. Would you agree that you were aware of Mr. Jones' deadline to file his petition was May 16, 2019? . . . A. No.")). As Ms. Brown points outs, Ms. Puga did not communicate with Ms. Brown about her conversation with Mr. Jones because Ms. Puga was at another prison on May 16, 2019, nor did Mr. Jones speak with Ms. Brown May 16, 2019. *Id.*, ¶¶ 11–14, 18 (Defendants' Statement of Additional Undisputed Material Facts) (Ms. Brown

testified that she did not know that Mr. Jones spoke with Ms. Puga on May 15, 2019, about his need to access the law library to print his Petition on May 16, 2019). Defendants further point out that FCF's law library is the largest within CDOC—with 19 computers, enabling 19 inmates to be in the law library each session, of which there were two per day. *Id.*, ¶ 6 (citing ECF No. 197-2 (Puga Dep.)). Finally, Ms. Brown argues that inmates' deadlines changed frequently, and Mr. Jones's deadline for his Petition changed several times between January 1, 2019, and May 16, 2019. *Id.*, ¶ 7; *id.*, ¶ 8 (testifying that Mr. Jones constantly had a deadline and was always worried about getting into the law library).

Taken together, the Court easily finds that genuine fact disputes exist as to Mr. Jones's access-to-courts claim. The Court therefore denies Mr. Jones's summary judgment as to this claim.

2. *Defendant Brown's Motion for Summary Judgment*

Ms. Brown argues that summary judgment is warranted on Plaintiff's access-to-courts claim because Mr. Jones was not denied meaningful access, and he cannot show that he was pursuing a nonfrivolous claim. ECF No. 187 at 10–21. In response to the first argument, Mr. Jones argues that Ms. Brown admitted that she knew about Mr. Jones's May 16, 2019 deadline, knew that Mr. Jones typed and saved his Petition on the law library computers, and that she could have checked to see if it was printed prior to May 16 but refused to do so. ECF No. 195 at 11 (citing ECF 185-10 (Brown Dep.) 204:8–12 ("Q. So at least in May 2019 you knew his deadline was May 16th, right? . . . A. Yes."); *see also id.*, ¶ 22. Mr. Jones testified that he attempted to contact Ms. Brown on May 16,

9

but she would not help him. ECF No. 185, ¶¶ 35–40. It is also undisputed that Ms. Puga, the librarian on staff on May 15, told Mr. Jones that he could print his Petition the following day, and that Ms. Puga testified that she scheduled Mr. Jones for law library access for May 16. ECF No. 185, ¶¶ 25–26. Because of these genuine fact disputes, the issue of whether Ms. Brown denied Mr. Jones meaningful access to the courts is better suited for the jury.

In response to Ms. Brown's second argument, Mr. Jones argues that his Petition contained arguable claims of legal merit and thus was not frivolous. ECF No. 195 at 13. Specifically, in his Petition, he argued that *Brumfield v. Cain*, 576 U.S. 305 (2015) calls into question the caselaw relied on by the Tenth Circuit that found that federal courts cannot consider any facts that were not considered in the underlying state court action where, as in Mr. Jones's case, there is an allegation that his conviction was based on junk science. ECF No. 195 at 14. He argues that *Brumfield* strengthens the argument that the failure by a state to consider the fact-development opportunities available could provide for review under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Id.* He further points out that, although the Tenth Circuit denied his certificate of appealability, at no point did the Tenth Circuit state that Mr. Jones's arguments were frivolous or lacked merit. *Id.* (citing *Jones v. Archuleta*, 757 F. App'x 755 (10th Cir. 2018)). Although Ms. Brown spends three paragraphs arguing that *Brumfield* is distinguishable,

10

and thus Mr. Jones's Petition was unlikely to succeed even if he had timely filed, ECF No. 204 at 9–10, she fails to show that his Petition was frivolous.[4]

In sum, the parties each make reasonable arguments concerning the scope of *Brumfield*. *Compare* ECF No. 195 at 13–14, *with* ECF No. 204 at 9–10. Such arguments strongly suggest that Plaintiff's Petition was not frivolous. Based on the record and the parties' arguments, the Court cannot find as a matter of law that his Petition was frivolous or lacked any legal merit. The Court therefore denies Ms. Brown's summary judgment as to this claim.

### B. Retaliation Claim

The First Amendment prohibits prison officials from retaliating against inmates for exercising their constitutional rights. *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998); *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) ("Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts."). To satisfy a First Amendment retaliation claim against a government official, a plaintiff must show that

> (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the

---

[4] For reasons unknown to the Court, Defendants chose not to challenge the sufficiency of Mr. Jones's Petition until the summary judgment stage. *See* ECF No. 123 at 6 n.4 (Magistrate Judge Varholak noting that "Defendants have not challenged [the "frivolous"] prong of Plaintiff's access to courts claim [#93], and the Court therefore does not address whether Plaintiff's petition would have raised non-frivolous claims."). Defendants' argument would have been better suited for the motion to dismiss stage. *Christopher v. Harbury*, 536 U.S. 403, 416 (2002) ("Like any other element of an access claim, the underlying cause of action and its lost remedy *must be addressed by allegations in the complaint sufficient to give fair notice to a defendant*." (emphasis added)); *see also Leek*, 2022 WL 1134967, at *3 ("To be nonfrivolous, the plaintiff's underlying claim must be 'described well enough . . . to show that the 'arguable' nature of the underlying claim is more than hope.'" (quoting *Christopher*, 536 U.S. at 416). Mr. Jones states that the Petition was provided to Defendants, and Defendants make no argument that they were not given fair notice.

11

>
> defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Trant v. Oklahoma*, 754 F.3d 1158, 1169–70 (10th Cir. 2014) (citation omitted).

### 1.     *Plaintiff's Motion for Summary Judgment*

Mr. Jones moves for summary judgment on his retaliation claim. ECF No. 185 at 16–21. He argues that the undisputed facts prove that Defendants transferred him to chill his First Amendment right to file grievances. The Court, again, disagrees. Defendants argue that the undisputed evidence demonstrates a clear, non-retaliatory reason for his transfer: Associate Warden Matthew Winden decided to transfer Mr. Jones because Mr. Jones was attempting to "manipulate" Ms. Brown and Ms. Puga, and because Ms. Puga reported that Mr. Jones was displaying behavior that frightened her. ECF No. 197 at 20; *id.*, ¶¶ 21–31. Having reviewed the parties' briefs, the Court has no trouble finding that genuine fact disputes exist as to Mr. Jones's retaliation claim. The Court therefore also denies Mr. Jones's summary judgment motion as to this claim.

### 2.     *Defendants' Motion for Summary Judgment*

Like Mr. Jones, Defendants move for summary judgment on Mr. Jones's retaliation claim. ECF No. 187 at 21–26. Defendants argue that this claim is based on nothing but pure speculation, that Defendants had legitimate penological reasons for transferring Mr. Jones from FCF, and that there is "no evidence that Moore acted with retaliatory motive." Considering the facts in light most favorable to Mr. Jones, the Court rejects each argument.

It is undisputed that Mr. Jones filed two grievances on May 21, 2019—one about his denial of access on May 16, and one complaining about Ms. Brown's lack of legal qualifications. ECF No. 187, ¶ 23. It is also undisputed that the day Ms. Brown received these grievances, Ms. Brown and Ms. Puga asked to meet with Associate Warden Winden to discuss Mr. Jones. *Id.*, ¶ 24. Defendants argue that they requested this meeting solely because Mr. Jones allegedly made Ms. Puga uncomfortable, claiming that Warden Winden only considered Ms. Puga's feelings and not the grievances Mr. Jones filed. ECF No. 187 at 24. The Court finds that a jury could conclude that Defendants acted with retaliatory motive. Defendants contend that Mr. Jones had "romantic interests" in Ms. Puga, ECF No. 187, ¶ 25, but it is undisputed that Ms. Puga never filed an incident report against Mr. Jones, ECF No. 195, ¶ 25. Mr. Jones also notes that Ms. Puga filed an incident report against a different inmate who made sexual comments about her. *Id.* Although Defendants write off this incident as "immaterial," a reasonable juror could find it relevant that she chose not to file an incident report in one instance but not the other.

Because genuine fact disputes exist as to Mr. Jones's retaliation claim, the Court denies Defendants' summary judgment as to this claim.

### C.     Qualified Immunity

Defendants argue that they are entitled to qualified immunity on both of Mr. Jones's claims. The Court disagrees.

Defendants spend *one sentence* on the access-to-courts claim, arguing that, "[b]ecause, as detailed above, Jones cannot satisfy the elements necessary to establish his denial of access to courts and retaliation claims against Brown and Moore,

13

Defendants are entitled to qualified immunity." ECF No. 187 at 27. The Court has already determined that Mr. Jones has provided competent evidence supporting his access-to-courts claim such that a reasonable juror could find in his favor on this claim. (The same is true for his retaliation claim, addressed in more detail below.) Moreover, Defendants do not argue that it was *not* clearly established in 2019 that prison officials cannot impede an inmate's ability to file a nonfrivolous habeas petition. *See* ECF No. 195 at 19 (citing *Lewis*, 518 U.S. at 348 for the proposition that an actual injury from denial of access to courts can be the inability to meet a filing deadline, and *Simkins*, 406 F.3d at 1242 for the proposition that states "may not erect barriers that impede the right of access of" inmates for ". . . civil actions"). Indeed, Defendants do not address Mr. Jones's arguments or his cited caselaw in their reply brief. *See* ECF No. 204 at 15–16.

Ms. Moore similarly spends little time arguing that she is entitled to qualified immunity on Mr. Jones's retaliation claim.[5] *See id.* at 28 ("Jones's retaliation claim against Moore in her individual capacity also fails because he cannot show she violated any clearly established law."). To support this assertion, Defendants argue that the "undisputed material facts show that [Ms. Moore] was not aware of Jones's grievances against Brown or the alleged bases of his grievances." *Id.* But this purported undisputed

---

[5] Other than their broad and conclusory argument that Ms. Brown is entitled to qualified immunity because "Jones cannot satisfy the elements necessary to establish his . . . retaliation claim[] against Brown and Moore," Defendants make no argument that Ms. Brown is entitled to qualified immunity on Mr. Jones's retaliation claim. Even so, a reasonable juror could conclude that Ms. Brown violated Mr. Jones's clearly established right to grieve based on the evidence presented. *See* ECF No. 195 at 19; *Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010) ("It is well-settled that [p]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts." (citation and quotations omitted)); *Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991) ("[P]rison officials cannot punish plaintiff for exercising his first amendment rights by . . . transferring him from one job to another.");

Case No. 1:21-cv-01792-CNS-STV   Document 206   filed 10/08/24   USDC Colorado   pg 15 of 16

fact is, in fact, disputed. *See* ECF No. 195, ¶ 35 (citing Ms. Moore's deposition where she testified that she spoke with Mr. Moore about Mr. Jones, that Mr. Moore thought a "change of scenery" would be good for Mr. Jones, that she "believed" that Mr. Jones was harassing the law librarians but did not ask what Mr. Moore meant); *see also* ECF No. 195-7 (Moore Dep.) at 139:2–17. Mr. Jones also argues that Defendants' explanation for the transfer has "shifted" over time, first stating that Ms. Moore transferred Mr. Jones because Mr. Moore told her to, but in their summary judgment motion, Defendants claim that the decision came from Warden Winden. ECF No. 195 at 20; *see also Jones v. Solomon*, 90 F.4th 198, 213 (4th Cir. 2024) (rejecting defendants' argument that they were entitled to qualified immunity on a retaliatory transfer claim where the "alternate explanation for the transfer has shifted over time, creating doubt as to the veracity of that explanation").

"[I]n determining whether the plaintiff has satisfied the necessary two-pronged qualified-immunity showing, courts ordinarily accept the plaintiff's version of the facts" so long as the "plaintiff's version of the facts [] find support in the record." *A.M. v. Holmes*, 830 F.3d 1123, 1136 (10th Cir. 2016). As outlined above, the Court finds that Mr. Jones's version of the facts is supported by competent evidence. Defendants are entitled to rebut that evidence at trial with their own evidence. But when viewing the facts in light most favorable to Mr. Jones, *see Al-Turki v. Robinson*, 762 F.3d 1188, 1191 (10th Cir. 2014) (district courts consider the facts in light most favorable to a plaintiff when considering qualified immunity challenges), the Court finds that Mr. Jones has satisfied his burden to overcome Defendants' qualified immunity challenge.

15

### D. Plaintiff's Prospective Relief

Defendants argue that Plaintiff's requests for declaratory, injunctive, and equitable relief are barred because a plaintiff bringing claims under 42 U.S.C. § 1983 may sue an individual-capacity defendant for money damages only. ECF No. 187 at 28–29. Because Ms. Brown and Ms. Moore are named in their individual capacities only, Defendants argue that Mr. Jones's claims for prospective relief fail. *Id.* In response, Mr. Jones concedes that he did not sue Ms. Brown or Ms. Moore in their official capacities, and he is no longer seeking injunctive or prospective relief. ECF No. 195 at 20. The Court thus grants Defendants' motion for summary judgment on Mr. Jones's requests for prospective relief.

### IV. CONCLUSION

Consistent with the above analysis, the Court DENIES Plaintiff's motion for summary judgment, ECF No. 185, and GRANTS in part and DENIES in part Defendants' motion for summary judgment, ECF No. 187.

DATED this 8th day of October 2024.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge